UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

CMR CONSTRUCTION AND ROOFING, LLC,

    Plaintiff,

v.                                        Case No. 2:20-cv-00416-JLB-NPM

AMERICAN CAPITAL ASSURANCE CORPORATION,

    Defendant.
_____/

## ORDER

Under Federal Rules of Civil Procedure 12(b)(6) and 12(f)(2), Defendant American Capital Assurance Corporation ("AmCap") moves to: (1) dismiss Count IX of Plaintiff CMR Construction and Roofing LLC's ("CMR") complaint for violation of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), Fla. Stat. §§ 501.201–501.23 (2020); and (2) strike CMR's requests for attorneys' fees in Counts I through VIII of the complaint. (Doc. 9.) CMR requests leave to address the attorneys' fees issue but opposes dismissal of Count IX. (Doc. 14.) The Court agrees with AmCap that Count IX must be dismissed with prejudice because AmCap is exempt from FDUTPA liability. Accordingly, AmCap's motion is **GRANTED**.

### BACKGROUND

CMR executed separate agreements with four condominium associations in Lee County to repair damage the associations' buildings sustained from Hurricane Irma. (Doc. 1 at ¶¶ 1, 16.) In exchange, CMR would become the payee for any

benefits under the associations' property insurance policies. (Id. at ¶ 20.) AmCap was the insurer for all four associations. (Id. at ¶ 9.) After CMR had already begun work, AmCap retained a competitor contractor to make the same repairs. (Id. at ¶ 25.) Counts I–VII of CMR's complaint are for tortious interference, and the wherefore clause of each count requests attorneys' fees. In Count IX of the complaint, CMR claims that AmCap violated FDUTPA by: (1) interfering in the associations' agreements with CMR, (2) engaging in unfair settlement practices, (3) coercing or intimidating the associations into breaching their agreements with CMR, and (4) unlawfully acting as a "construction manager" without the license Florida law requires. (Id. at ¶¶ 107a–107e.)

AmCap moves to dismiss Count IX, arguing it is statutorily exempt from FDUTPA liability. (Doc. 9 at 5–7); Fla. Stat. 501.212 (2020). Specifically, AmCap argues that it is exempt from FDUTPA because it is an insurance company regulated by the administrative agencies listed in sections 501.211(4)(a) and (4)(d). AmCap also moves to strike CMR's requests for attorneys' fees in Counts I–VIII because there is no legal basis to award attorneys' fees for tortious interference. (Doc. 9 at 12.) CMR requests leave to amend the complaint and address the fee issue, but it also argues that Count IX should not be dismissed because AmCap does not qualify for the statutory exemption. (Doc. 14 at 4–13, 19.)

## LEGAL STANDARD

"At the motion to dismiss stage, all well-pleaded facts are accepted as true, and the reasonable inferences therefrom are construed in the light most favorable to

the plaintiff." Bryant v. Avado Brands, Inc., 187 F.3d 1271, 1274 n.1 (11th Cir. 1999) (citing Hawthorne v. Mac Adjustment, Inc., 140 F.3d 1367, 1370 (11th Cir.1998)). A complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Under this standard, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

A court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). A motion to strike "is a drastic remedy to be resorted to only when required for the purposes of justice" and "should be granted only when the pleading to be stricken has no possible relation to the controversy." Augustus v. Bd. of Pub. Instruction, 306 F.2d 862, 868 (5th Cir. 1962) (quoting Brown & Williamson Tobacco Corp. v. United States, 201 F.2d 819, 822 (6th Cir. 1953)).

## DISCUSSION

I. **Count IX Must be Dismissed Because, as CMR concedes, AmCap is regulated under the laws administered by the Department of Financial Services.**

"The express legislative purpose of FDUTPA is to protect individual consumers and certain defined business activities from deceptive, unfair, or unconscionable methods of business competition and trade practice." Diamond Aircraft Indus., Inc. v. Horowitch, 107 So. 3d 362, 367 (Fla. 2013). To achieve this purpose, FDUTPA provides a civil remedy to consumers who have been aggrieved by unlawful trade practices. See Fla. Stat. § 501.211 (2020). But the plain

3

language of FDUPTA also excludes certain persons and activities from civil liability. At issue in this case is section 501.212(4), Florida Statutes, which states:

> This part does not apply to: . . .
>
> (4) Any <u>person or activity</u> regulated under laws administered by:
>
>> (a) The Office of Insurance Regulation of the Financial Services Commission;
>>
>> (b) Banks, credit unions, and savings and loan associations regulated by the Office of Financial Regulation of the Financial Services Commission;
>>
>> (c) Banks, credit unions, and savings and loan associations regulated by federal agencies; or
>>
>> (d) <u>Any person or activity</u> regulated under the laws administered by the former Department of Insurance which are now administered by the Department of Financial Services.

(Emphasis added.)

Section 501.212(4) states that "[a]ny person <u>or</u> activity" regulated under laws administered by certain entities is not covered by FDUTPA. (Emphasis added.) Generally, "the use of a disjunctive in a statute indicates alternatives and requires that those alternatives be treated separately." <u>Brown v. Budget Rent-A-Car Sys., Inc.</u>, 119 F.3d 922, 924 (11th Cir. 1997) (quoting <u>Quindlen v. Prudential Ins. Co. of Am.</u>, 482 F.2d 876, 878 (5th Cir. 1973)). The disjunctive "or" in section 501.212(4) indicates that there are two separate and distinct exclusions from liability under FDUTPA—either "persons" regulated under laws administered by certain administrative agencies, or "activities" regulated under the same.

AmCap argues that it is exempt from FDUTPA because it is an insurance company regulated by the administrative agencies listed in sections 501.211(4)(a)

4

and (4)(d). CMR responds that the applicability of section 501.211(4) depends on two questions. As CMR explains:

> The first question is whether [AmCap] is an insurance company that is regulated by [the Department of Financial Services]. <u>Generally, the answer is yes</u>. Then, the Court must resolve questions about the applicability of the FDUTPA exemption by looking to the activity which is the subject of the lawsuit, and whether the activity is subject to the regulatory authority of the agency.

(Doc. 14 at 4) (emphasis added). In other words, CMR concedes that AmCap is a "person" that is "regulated under the laws administered by . . . the Department of Financial Services." § 501.211(4)(d). But, in CMR's view, this is not enough; AmCap must also be engaged in an "activity" covered by section 501.211(4).

The Court disagrees with CMR's reading because it is not consistent with the text of the statute. "When statutory text is unambiguous, this Court must apply that language as written." <u>Stansell v. Revolutionary Armed Forces of Colom.</u>, 704 F.3d 910, 915 (11th Cir. 2013) (citing <u>Albernaz v. United States</u>, 450 U.S. 333, 336 (1981)). "Indeed, a statute's plain language controls unless it is <u>inescapably</u> ambiguous." <u>Id.</u> (internal quotations and citation omitted).

The unambiguous text of section 501.212(4) covers both "person[s]" or "activit[ies]" regulated under laws administered by certain administrative agencies. The exemptions enumerated in the statute apply to any "person <u>or</u> activity," not any person <u>and</u> activity. CMR concedes that AmCap—an insurance company—is a "person" regulated by "the former Department of Insurance which are now administered by the Department of Financial Services." § 501.212(4)(d). This

5

concession necessarily means that AmCap is not subject to FDUTPA, and therefore Count IX of CMR's complaint must be dismissed.

The Court's reading of the statute is also supported by how other exceptions listed in section 501.212(4) are treated. For example, in <u>Regions Bank v. Legal Outsource PA</u>, this Court noted that there was "some ambiguity in regard to whether being regulated by a federal agency is sufficient in and of itself to be exempt under [section] 501.212(4)(c) or if, in addition to being federally regulated, the activity at issue must be subject to the federal regulatory authority." 2:14-cv-476-FtM-29MRM, 2015 WL 7777516, at *5 (M.D. Fla. Dec. 3, 2015). But after analyzing the relevant case law, the Court concluded that "[t]he majority of Florida courts take the former position." <u>Id.</u>

The Sixth Circuit recently agreed with the Court's view in an unpublished opinion that applied Florida law. <u>See</u> <u>Nino v. Flagstar Bank, FSB</u>, 766 F. App'x 199, 202 (6th Cir. 2019) ("'By its express terms,' the FDUTPA does not apply to federally regulated banks, regardless of the activity at issue." (quoting <u>Wilson v. EverBank, N.A.</u>, 77 F. Supp. 3d 1202, 1221 (S.D. Fla. 2015))). The Court sees no textual or logical reason why sections 501.212(4)(a) or (4)(d) would not work the same way.

CMR insists that its two-step approach is supported by a bevy of federal decisions applying Florida law. (Doc. 14 at 4.) These decisions all rely on a single opinion by the Florida First District Court of Appeal: <u>W.S. Badcock Corp. v. Myers</u>,

6

696 So. 2d 776 (Fla. 1st DCA 1996).  After reviewing Myers, however, it is wholly distinguishable from the facts here.

In Myers, two plaintiffs brought a class action under FDUTPA against the W.S. Badcock Corporation ("Badcock"), a well-known furniture retailer.  Id. at 777–78.  The crux of plaintiffs' claims was that Badcock charged them a seven-dollar "non-filing fee" in connection with purchases of furniture that were financed by Badcock itself.  Id. at 780.  Badcock represented that the fee would help it purchase "non-filing insurance" to protect it from losses resulting from failure to file a financing statement (and thereby perfect its security interest in the financed furniture).  Id. at 781.  But Badcock never needed a financing statement—and therefore never needed insurance—because its purchase money security interest was automatically perfected.  Id.  And ninety percent of the "premiums" that Badcock paid to its insurer under its policy were remitted back to Badcock as "losses."  Id.  The plaintiffs claimed that Badcock's seven-dollar fee was a deceptive and unfair trade practice under FDUTPA.  Id. at 780.  In turn, Badcock argued that it was subject to the exemption in section 501.212(4)(d) because "the conduct at issue involves insurance," and FDUTPA "does not apply to activity regulated by the Department of Insurance."  Id. at 779 (emphasis added).

Under this framing of the issue, the First District stated, "To resolve the question, we must determine whether the service provided to Badcock by [its insurance company] constituted insurance, subject to the regulatory authority of the Department of Insurance."  Id. at 782.  Ultimately, after analyzing several factors

7

enumerated in Florida case law, the First DCA concluded that the activity at issue was not "insurance," and therefore Badcock was not covered by the exemption in section 501.212(4)(d). But the Myers court never addressed whether Badcock was a "person" subject to the statutory exemption—likely because it was unnecessary or Badcock never argued it. Indeed, it seems rather obvious that Badcock could not also qualify as a "person" subject to the exemption because Badcock is a furniture retailer, not an insurance company.

Later, in another case that also did not involve an insurance company as a defendant, the Eleventh Circuit cited Myers for the following proposition:

> The express language of Fla. Stat. § 501.212(4)(a) creates a specific exemption from suit under FDUPTA for "[a]ny person or activity regulated under laws administered by ... [t]he Office of Insurance Regulation of the Financial Services Commission." Florida courts resolve questions about the applicability of this provision by looking to the activity which is the subject of the lawsuit, and whether that activity is subject to the regulatory authority of the Office of Insurance Regulation.

State Farm Mut. Auto. Ins. Co. v. Physicians Inj. Care Ctr., Inc., 427 F. App'x 714, 723 (11th Cir. 2011) (citing Myers, 696 So.2d at 782–83), rev'd in part sub nom. State Farm Mut. Auto. Ins. Co. v. Williams, 824 F.3d 1311 (11th Cir. 2014). But this unpublished Eleventh Circuit case (which was later partially reversed on other grounds), did not involve a "person" that could have potentially been covered by the exception—the defendant was an auto accident clinic that allegedly billed an insurance company for sham treatments. Id. at 717. Thus, the applicability of the exception again turned on the "activity," not the "person."

8

In this case, it is <u>undisputed</u> that AmCap is an insurance company that is regulated by the Department of Financial Services. (Doc. 14 at 4.) Therefore, AmCap is a "person" covered by section 501.212(4)(d). And while CMR claims that there are factual issues to be resolved about the nature of AmCap's activity, it has already given away the game by conceding that AmCap is covered by section 501.212(4)(d)'s exemption. Under the plain and unambiguous language of the statute, <u>Nino</u>, and <u>Regions Bank</u>, no further analysis is necessary.

In sum, for this Court to interpret section 501.214 as CMR wishes, it would have to rewrite section 501.212(4) by striking the "persons or" from the phrase "persons or activity." That way, the statute would only apply to "activity" regulated by the enumerated agencies. The Court declines CMR's invitation. Rewriting statutes is the Florida Legislature's job, not this Court's.

## II. The Requests for Attorneys' Fees in Counts I through VIII are Stricken Without Prejudice for CMR to Amend.

AmCap also moves to strike CMR's requests for attorneys' fees in Counts I through VIII of the complaint because there is no basis to justify attorneys' fees for common-law claims of tortious interference. (Doc. 9 at 12.) Because CMR requests leave to amend the complaint and address this issue, the Court grants AmCap's motion to strike without prejudice. (Doc. 14 at 19.)

For the above reasons, it is **ORDERED**:

1. AmCap's motion to dismiss Count IX of the complaint and motion to strike (Doc. 9) is **GRANTED**.

2. Count IX of the complaint is thus **DISMISSED WITH PREJUDICE**.

3. CMR's requests for attorneys' fees under Counts I–VIII are **STRICKEN without prejudice** for CMR to amend **no later than February 16, 2021**.

**ORDERED** in Fort Myers, on February 2, 2021.

*[Signature]*

JOHN L. BADALAMENTI
UNITED STATES DISTRICT JUDGE